IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


JOYCE A. BAKER,

    Plaintiff,

vs.                                               CASE NO. 4:05CV391-MMP/AK

MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security**

    Defendant.

_____/


**REPORT AND RECOMMENDATION**

    This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

    Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.     **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on February 22, 2000, alleging a disability onset date of October 1, 1999, because of manic depression, back pain, nervous disorder, and alcoholism.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on April 22, 2004, and entered an unfavorable decision on January 28, 2005.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that she suffered from chronic alcoholism, depression, possible liver disease, hypertension, borderline intellectual functioning, and substance abuse disorder, which were severe impairments, but that none of these impairments met the listing requirements.  The ALJ further found that Plaintiff's residual functional capacity was so limited as to preclude even sedentary work and that under the Medical-Vocational Guidelines, she was disabled.  However, the ALJ also found that alcoholism was a contributing factor material to her disability rendering her "not disabled" under the regulations applicable to alcohol and substance abuse disorders.

C.     **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in finding that alcoholism was material to her disability and that she was noncompliant in her treatment.

**No. 1:02CV125-SPM/AK**

The Commissioner responds that every hospitalization and legal difficulty in the record concerns substance abuse and "squarely pinpoints that alcohol abuse [is] the source of Plaintiff's profound difficulties." (Doc. 20, p. 6).  The Commissioner also points to references in the record where Plaintiff worked during periods of sobriety, in spite of her continued depression, which supports a finding that alcohol is the material factor that prevents her from working, not her depression.  (See R. 306, 336); see also Vester v. Barnhart, 416 F.3d 886, 890-891 (8th Circ. 2005).

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.    STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the

evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

**No. 1:02CV125-SPM/AK**

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**No. 1:02CV125-SPM/AK**

### E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff has a long history of alcoholism and depression or bipolar disorder dating back to treatment at Apalachee Center for Human Services since June 1998. (R. 300-307, 377). She has also been treated at Tallahassee Memorial Behavioral Center for "depression," but her treatment history reveals that alcohol abuse precipitated the admission. (R. 378-386).

Dr. Frank Pate wrote that he had been treating Plaintiff since December 1999, and he found that she had "no evidence of a thought disorder. Primary reason for visiting with me was a chronic alcohol abuse problem." (R. 331-332).

Psychologist Richard Senesac also confirmed that he had been treating her as "a chronic abuser of alcohol...." (R. 333-340). Plaintiff told him upon admission to a detox facility that she had been arrested four times for DUI. (R. 336).

Dr. Jeff Landau has been treating Plaintiff since March 2000 and states that her primary diagnosis is alcohol abuse with bipolar disorder, most recent episode depressed, mild. (R. 387-403, 486-488). He opined that if she took her medications as prescribed and did not drink she should be able to hold a job. (R. 390). She began treatment with him after a hospitalization at a detox facility. (R. 403).

Dr. Paul Zislis treated Plaintiff from September 11, 2001, following an admission for detox at Tallahassee Behavioral Center. (R. 447-449, 492-498). He prescribed medication, but she frequently failed to show up for appointments. (R. 489). Interrogatories were sent to Dr. Zislis who responded that he urged Plaintiff to stop

**No. 1:02CV125-SPM/AK**

drinking at every visit, that her alcohol use was "debilitating" on her medical condition and "adversely" affected her prescribed medication, and which he opined "may certainly precipitate and/or exacerbate a great many health problems.  Certainly it contributes to patient's chronic depression."  (R. 520).

Interrogatories to Dr. G. R. Whiddon, one of Plaintiff's treating physicians, asked if he had urged her to quit drinking and he responded that he had from the very first visit, that drinking decreases the effectiveness of her medication, aggravates the stomach, and "can worsen either end of the spectrum of [bipolar]."  (R. 508).  He was also of the opinion that if she had stopped drinking when he suggested it to her or if she stopped drinking now there would be significant improvement in her condition.  (R. 509).

A physical consultative examination was conducted with Dr. William Guy on October 16, 2001.  (R. 404-406).  She reports no problems with daily activities, or sitting, standing or walking so long as she is sober.  (R. 404).  His assessment was chronic alcoholism with major depression.  (R. 406).

A mental consultative examination was attempted by Dr. Mary Price on November 26, 2001, but Plaintiff was intoxicated and the examination could not be conducted.  (R. 407-408).

Another mental consultative examination was conducted by Dr. Marie Hume on July 12, 2004, at which she appeared cooperative and a reliable informant.  (R. 513-519).  She admitted to drinking the day before and the examiner was unsure if she were still under the influence.  (R. 514).  It was suspected that her diminished cognitive

**No. 1:02CV125-SPM/AK**

functioning was either because she was still under the influence or because of past alcohol abuse. (R. 514). Her prognosis was "Poor. Ms. Baker has been unable or unwilling to stop drinking and it Is contributing both to her depression as well as to diminished cognitive functioning." (R. 516).

Two Physical RFC's in the record fix her at a medium level of exertion. (R. 410-417, 478-485).

A Psychiatric Review Form found her to have an affective disorder (depression) and a substance abuse disorder, but that neither of these were severe based on the assessment of her treating physician, Dr. Landau, that if she were compliant with her medication and refrained from drinking she would be capable of working. (R. 432-441).

In another Psychiatric Review Form, she was found to have mild to moderate limitations in her daily activities, but no limitations in the "C"criteria to meet the listings for substance abuse or affective disorders. (R. 450-467).

F.  **SUMMARY OF THE ADMINISTRATIVE HEARING**

Plaintiff attributes her problems to her "stress" and family deaths dating back to 1976. (R. 41). She continues to drink about two quarts a day. (R. 42). She admits that all of her doctors have told her to stop drinking, but drinks to stop thinking. (R. 42-43). She stopped for six months one time when she was in jail. (R. 44). While she states that drinking interferes with her medication, so she does not do it, she then stated that she drinks during the day and takes the medication at night when the beer has "done went out on me." (R. 47). She concedes that this means she is drinking while taking

**No. 1:02CV125-SPM/AK**

her medication. (R. 47). She watches t.v. mostly and cooks and cleans for her husband, except for times when she just sits and does not feel like moving. (R. 50). She says that she used to get jobs easily, but now she has a felony conviction for six DUI's which prevents her from being hired and she has a transportation problem. (R. 54).

**G.    DISCUSSION**

    a)    Drug and Alcohol Use

If there is medical evidence of drug addiction or alcoholism, the ALJ must first determine if the person is disabled using the standard five step approach. 20 CFR §404.920. Utilizing this approach, the ALJ determines whether Plaintiff meets the requirements of Listing 12.09 for substance abuse disorders.[2] See below. Then he must determine whether drug and alcohol use is a contributing factor material to disability or whether the person would still be found disabled even if he or she stopped

---

[2] Listing 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorder is met when the requirements in any of the following (A through I) are satisfied.
    A. Organic mental disorders.  Evaluate under 12.02.
    B. Depressive syndrome.  Evaluate under 12.04.
    C. Anxiety disorders.  Evaluate under 12/06.
    D. Personality disorders.  Evaluate under 12.08.
    E. Peripheral neuropathies.  Evaluate under 11.14.
    F. Liver damage.  Evaluate under 5.05.
    G. Gastritis.  Evaluate under 5.04.
    H. Pancreatitis.  Evaluate under 5.08.
    I. Seizures.  Evaluate under 11.02 or 11.03.

**No. 1:02CV125-SPM/AK**

taking drugs or alcohol.  20 CFR §404.1535.  In making this determination, the ALJ will evaluate which of his or her physical and mental limitations would remain if that person stopped using drugs or alcohol and then determine whether these remaining limitations would be disabling.  20 CFR §404.1535 (b)(2).[3]  Plaintiff carries the burden of proving that drug and alcohol use is not a contributing factor to her disability.  Doughty v. Apfel, 245 F.3d 1274, 1279-1280 (11th Cir. 2001).

There is no real argument that Plaintiff's alcoholism is not only a contributing factor to her disability, it is the primary cause.  Importantly, **every** doctor who has ever treated her (Drs. Pate, Senesac, Landau, Zislis, and Whiddon) all agree that alcoholism is her primary problem, it hinders the treatment of her other conditions, and her medical condition would be *significantly* improved if she were to quit drinking.  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ *must* give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Thus, there is substantial evidence to support the ALJ's finding on this issue, and the Court must affirm his decision.

---

[3]  If drugs or alcohol use is determined to be a contributing factor, then a person must seek appropriate treatment at a facility approved by SSA for which they are not required to pay.  20 CFR §404.1536.  Appropriate treatment is determined with the involvement of a licensed additional professional on the basis of a detailed assessment of the claimant.  20 CFR §404.1537.  No benefits will be paid if the person does not seek treatment or fails to comply with the terms and conditions of treatment, which includes abstinence from drugs and alcohol, attendance in treatment sessions, improved social functioning and levels of gainful activity, participation in vocational rehabilitation and avoidance of criminal activity.  20 CFR §404.1536 and 404.1540.

**No. 1:02CV125-SPM/AK**

      b)      <u>Noncompliance</u>

A claimant's refusal to follow prescribed medical treatment without a good reason will preclude disability, unless poverty can excuse non-compliance. <u>Ellison v. Barnhart</u>, 355 F.2d 1272, 1275 (11th Cir. 2003). The record also amply supports the ALJ's finding that Plaintiff was non compliant with prescribed treatment for her conditions of alcoholism and bipolar. She told Dr. Price at the consultative examination that she had not been taking her medications. (R. 407). She also told Dr. Zislis on two occasions that she was not taking her medications as prescribed and had been out for months. (R. 442, 494). Plaintiff did not offer any reason for failing to follow this treatment. She failed to keep her follow-up appointments after at least one admission for detox (R. 376) and admitted that she did not take the Antabuse medication when she knew she was going to drink. (R. 404). Thus, there is substantial evidence to support this finding, too.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this <u>*7*$^{th}$</u> day of May, 2007.

                                      <u>*s/ A. KORNBLUM*</u>
                                      **ALLAN KORNBLUM**
                                      **UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**No. 1:02CV125-SPM/AK**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:02CV125-SPM/AK**